## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA *ex rel.*
STEVEN SCOTT,

        Plaintiff,

    v.

HUMANA INC.,
500 West Main Street
Louisville, KY 40202

        Defendant.

Underlying Action:
No. 3:18-cv-00061-GNS-CHL
United States District Court
Western District of Kentucky

## HUMANA INC.'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL NONPARTY THE CENTERS FOR MEDICARE AND MEDICAID SERVICES TO COMPLY WITH SUBPOENAS

# <u>TABLE OF CONTENTS</u>

**Page**

BACKGROUND ............................................................................................................... 1

    A.    The Underlying Action ............................................................................1

    B.    Humana's Efforts To Negotiate CMS's Subpoena Compliance..................2

    C.    CMS's Rejection Of A Stipulated Protective Agreement...........................4

    D.    The Outstanding Requests Subject To Motion .........................................5

LEGAL STANDARD........................................................................................................ 10

ARGUMENT .................................................................................................................... 11

    I.    HUMANA'S REQUESTS FOR DOCUMENTS ARE RELEVANT, PROPORTIONAL, AND NOT UNDULY BURDENSOME..............................12

    A.    Humana's Subpoena Seeks Relevant Documents Proportional To The Needs Of The Case ....................................................................12

    B.    Humana's Requests Do Not Unduly Burden CMS...................................14

    II.    THE COURT SHOULD COMPEL THE REQUESTED TESTIMONY FROM CMS..............................................................................................15

CONCLUSION................................................................................................................. 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. FBI*,
    194 F.R.D. 305 (D.D.C. 2000)............................................................................13

*Buie v. Dist. of Columbia*,
    327 F.R.D. 1 (D.D.C. 2018)..............................................................................13

*DL v. Dist. of Columbia*,
    251 F.R.D. 38 (D.D.C. 2008)............................................................................14

*Flanagan v. Wyndham Int'l Inc.*,
    231 F.R.D. 98 (D.D.C. 2005)............................................................................11

*In re Apollo Grp. Securities Litig.*,
    2007 WL 778653 (D.D.C. Mar. 12, 2007)......................................................14

*In re Shelton Fed. Grp., LLC*,
    2017 WL 3190558 (Bankr. D.D.C. July 26, 2017)........................................11

*Jewish War Veterans of the United States of America, Inc. v. Gates*,
    506 F. Supp. 2d 30 (D.D.C. 2007)...................................................................11

*Lopez v. City of N.Y.*,
    2007 WL 869590 (E.D.N.Y. Mar. 20, 2007)..................................................14

*Mount Hope Church v. Bash Back!*,
    705 F.3d 418 (9th Cir. 2012) ...........................................................................14

*Oxbow Carbon & Minerals LLC v. Union P. R.R. Co.*,
    322 F.R.D. 1 (D.D.C. 2017)..............................................................................13

*Payne v. Dist. of Columbia*,
    859 F. Supp. 2d 125 (D.D.C. 2012).................................................................15

*SEC v. Fuhlendorf*,
    2010 WL 3547951 (D. Colo. Sept. 7, 2010)...................................................14

*SEC v. Selden*,
    484 F. Supp. 2d 105 (D.D.C 2007)..................................................................11

*United States ex rel. Ortiz v. Mount Sinai Hosp.*,
    169 F. Supp. 3d 538 (S.D.N.Y. 2016).......................................................10, 14

*Universal Health Servs. v. United States ex rel. Escobar*,
    136 S. Ct. 1986 (2016).....................................................................................12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Watts v. SEC,*
    482 F.3d 501 (D.C. Cir. 2007) ................................................................................11

**Rules**

Fed. R. Civ. P. 26(b) ...........................................................................................12, 15

Fed. R. Civ. P. 37(a) ..................................................................................................10

Fed. R. Civ. P. 45 ......................................................................................................10

Fed. R. Civ. P. 45(d)(3)(A)(i) ...................................................................................14

Fed. R. Civ. P. 45(e) ..................................................................................................10

Pursuant to Federal Rule of Civil Procedure 45, Defendant Humana Inc. ("Humana")

moves this Court to compel the Centers for Medicare and Medicaid Services ("CMS") to comply

with the subpoenas for documents and testimony issued in connection with this action, which is

pending in the United States District Court for the Western District of Kentucky.  As set forth

below, Humana requires documents and testimony from CMS in order to defend itself against a

*qui tam* complaint alleging False Claims Act ("FCA") violations in connection with Medicare

Part D bids that Humana submitted to CMS.  In June 2018, Humana requested documents and

testimony from CMS pursuant to 45 C.F.R. §§ 2.1–2.6.  For over five months, Humana has

conferred with the agency in an effort to reach a mutually agreeable production of responsive

documents and testimony.  Because CMS has not agreed to provide fully the requested discovery

and Humana has exhausted its best efforts to resolve the agency's objections, Humana moves

this Court for an order compelling the production of documents and testimony requested in

Humana's June 4, 2018 correspondence and accompanying subpoenas (the "*Touhy* Request").

## BACKGROUND

### A.    The Underlying Action

In January 2016, Relator Steven Scott ("Relator") filed a sealed complaint against

Humana alleging FCA violations in connection with the Walmart Plan, Humana's basic

Medicare Part D prescription drug plan ("PDP").  Complaint ("Compl.") ¶ 80 (DN 1), No. 3:18-

cv-00061-GNS-CHL (W.D. Ky. filed Jan. 19, 2016).  To offer a PDP, a plan sponsor like

Humana must submit a bid to CMS.  If CMS approves the bid, the plan sponsor then contracts

with the agency to offer prescription drug benefits to Medicare beneficiaries during the following

calendar year.  Relator contends that Humana's bids for the Walmart Plan contained knowingly

false actuarial assumptions about the future rate at which Walmart Plan members, and especially

low-income members, would use pharmacies in the plan's preferred network.  *Id.* ¶ 6.

Part D program requirements and CMS decision-making lie at the heart of Relator's FCA allegations: to receive CMS approval, a bid for a PDP like the Walmart Plan must describe prescription drug benefits that are "actuarially equivalent" to the defined standard Part D benefit. *Id.* ¶ 4. Relator alleges that, as a result of supposedly false assumptions about preferred pharmacy utilization by beneficiaries, Humana's bids for 2011 through 2017 falsely represented that the Walmart Plan would be actuarially equivalent to the defined standard. *See id.* ¶¶ 128-190. Specifically, he contends that "unrealistic" assumptions about the rate at which Walmart Plan members would use less expensive preferred pharmacies enabled Humana to overstate the average percentage of drug costs the plan would cover and understate the average coinsurance for which plan members would be responsible— thereby falsely representing that the Walmart Plan would cover an actuarially equivalent 75 percent of anticipated drug costs in the initial coverage limit ("ICL") phase of prescription drug coverage, with members responsible for 25 percent. *Id.* ¶¶ 5-9. Had CMS known of these false assumptions, Relator contends, "it would not have approved or renewed Humana's Part D contract," *id.* ¶¶133, 192—and would not have paid Humana under its contract, *id.* ¶ 194.

### B. Humana's Efforts To Negotiate CMS's Subpoena Compliance

Because the PDP approval process is central to Relator's allegations, Humana issued subpoenas for documents and testimony to CMS on June 4, 2018. *See* Declaration of Amanda M. Santella ("Santella Decl."), Ex. A ("*Touhy* Request"). Humana's accompanying requests complied with 45 C.F.R. §§ 2.1–2.6, which contain the *Touhy* regulations issued by the United States Department of Health and Human Services ("HHS"), of which CMS is a component. The subpoenas sought documents and testimony concerning CMS's evaluation of PDP bids, its payment to PDP plan sponsors, and information sufficient to show CMS's considerations in selecting PDPs and making payments to sponsors of PDPs that offer actuarially equivalent

coverage.  In light of the November 2, 2018 fact discovery deadline in the underlying action at that time,[1] Humana's subpoena for documents required compliance by July 6, 2018, and its subpoena for testimony required compliance by August 3, 2018.  *Touhy* Request at 15-16.  Both subpoenas required compliance at the Washington, D.C. offices of Humana's outside counsel. *Id.*

The parties met and conferred on July 5 to discuss CMS's responses and objections in anticipation of the subpoenas' compliance deadlines.  Santella Decl. Ex. B (July 16, 2018 Letter from A. Santella to J. Abrams).  During a second meet-and-confer discussion on July 23, CMS represented that it anticipated responding to certain subpoena requests in August and commencing a rolling production in response to other requests in September.  Santella Decl. Ex. C (July 30, 2018 Letter from A. Santella to J. Abrams).  CMS also represented that the agency's "response to [Humana's] request for testimony [was] proceeding separately.  *Id.* at 5.

On August 3, CMS informed Humana that it would not authorize testimony in response to the subpoena.  Santella Decl. Ex. D (Aug. 3, 2018 Letter from P. Spitalnic to D. Leviss).  This refusal was, at least in part, based on CMS's assertion that the documents it would produce in response to Humana's document requests would "address a significant majority, if not all, of the topics" Humana had outlined for testimony.  *Id.* at 2.  CMS also indicated that it would consider supplementing its production through declarations.  *Id.* at 3.  While reserving its right to pursue enforcement of the subpoena for testimony, Humana agreed to defer seeking judicial relief until it had an opportunity to review the documents produced by CMS in response to the document subpoena.  Santella Decl. Ex. E (Oct. 18, 2018 Letter from A. Santella to J. Abrams).

---

[1] On July 30, 2018 the district court entered an order modifying the case management schedule.  Order on Telephonic Status Conference, *U.S. ex rel. Scott v. Humana*, No. 3:18-cv-61-GNS (July 30, 2018).  The court set January 18, 2019 as the new deadline for the close of fact discovery.  *Id.* at 2.

Since then, Humana met and conferred with CMS on multiple occasions, stressing that it could only assess the need for the noticed testimony if CMS made timely document productions and fully complied with Humana's subpoena by the end of September.  Santella Decl. Ex. E at 1. On an August 30 telephonic conference, CMS indicated its optimism that production would in fact be complete by the close of September.  *Id.*, *see also* Santella Decl. Ex. F (Sept. 10, 2018 Letter from A. Santella to J. Abrams).  But CMS produced no documents in September.  On October 11, CMS produced documents for the first time.  The production was responsive to one of Humana's fourteen requests, but in an accompanying letter, CMS represented that it had not identified responsive documents to at least four additional requests (Request Nos. 1, 4, 6 (b), (c) and (d), 8 and 9).  *See* Santella Decl. Ex. G (Oct. 12, 2018 Letter from J. Abrams to D. Leviss). CMS followed this initial production with the delivery of select additional documents on October 18 and November 5; however, each of these rolling productions was incomplete.  Santella Decl. ¶ 20.  At present, more than five months after Humana served its subpoenas, CMS has produced no documents in response to five of Humana's document requests despite assuring Humana that its document production would obviate the need for deposition testimony—and several of Humana's other requests remain unsatisfied.  Santella Decl. ¶¶ 29, 30.

### C.    CMS's Rejection Of A Stipulated Protective Agreement

CMS has withheld documents responsive to several of Humana's requests on the basis of its asserted need for a protective order.  Santella Decl. ¶ 31.  Humana explained to CMS that the Magistrate Judge presiding over the underlying action disfavors the entry of protective orders and instead asks parties and nonparties alike to address the protection of sensitive information through stipulated protective agreements, such as the one to which Humana, Relator, and other nonparties to the action have already agreed.  Santella Decl. ¶ 32.  When CMS nonetheless insisted that it would not produce certain documents unless the court itself entered a protective

order, Humana negotiated an agreed protective order acceptable to all parties and to CMS, and filed an unopposed motion seeking entry of that order.  Despite Humana's efforts to negotiate an acceptable protective order, and its offer to abide by the proposed order while it was pending approval by the court, CMS has refused produce provisional copies of documents to Humana's counsel unless and until the protective order is entered.  Santella Decl. ¶ 34.

On November 8, 2018, Magistrate Judge Colin Lindsay held a telephonic conference to resolve several discovery disputes, including the unopposed motion for the agreed protective order CMS had requested.  Santella Decl. ¶ 35; *see generally* Santella Decl. Ex. K (Nov. 8, 2018 Hr'g Tr. at 17:9-23:7).  Despite Humana's request that CMS join the conference to explain its need for the protective order, CMS opted not to participate.  *Id.*  At the conference, Magistrate Judge Lindsay reiterated his preference for protective agreements, declined to enter the order, questioned CMS's decision not to participate, and suggested that Humana proceed with a motion to compel production in compliance with its subpoenas.  Ex. K at 21:13-22:24.

### D.    The Outstanding Requests Subject To Motion

CMS appears to have satisfied Requests Nos. 6(a) and 7 and has represented that it has no documents responsive to Requests Nos. 1, 4, 6(b), (c) and (d), 8, and 9.  CMS has provided partial responses to the remainder of Humana's requests, and in many cases has produced no documents at all.  Humana's outstanding requests fall into seven categories:

**Documents Concerning CMS's Rejections/Questions of PDP Bids (Requests Nos. 2 and 3).**  Humana's first three requests sought information concerning the circumstances under which CMS has questioned PDP sponsors, or rejected their bids altogether, based on a plan's assumed or actual preferred pharmacy utilization, membership, low-income membership, and/or average member coinsurance in the ICL phase.  CMS fully responded to Request No. 1 by indicating that it has no responsive documents, but the agency has provided an incomplete

response to Request No. 2 and no response at all to Request No. 3.

Request No. 2 seeks documents sufficient to show CMS's questions to PDP sponsors based on actual or assumed preferred utilization, low-income membership, and/or average member coinsurance in the ICL phase.  Request No. 3 seeks documents sufficient to show the reasons why CMS rejected any PDP bids, or questioned any PDP sponsors, based on the plans' assumed or actual preferred pharmacy utilization, membership, low-income membership, and/or average member coinsurance in the ICL phase.  Such documents bear directly on Relator's contention that CMS would have rejected Humana's Walmart Plan bids or denied payments under its Walmart Plan contracts had it known that Humana's assumptions about preferred pharmacy utilization, low-income membership, and/or the average member coinsurance in the ICL phase were false.  *See, e.g.*, Compl. ¶¶192-94.

To accommodate CMS's objection that Request No. 2 was unduly burdensome, Humana agreed to accept provisionally a "sampling" of anonymized responsive questions.  Santella Decl. Ex. E at 2–3.  On September 24, CMS stated it would produce the documents "immediately."  *Id.* On October 9, CMS changed its position and raised a new "statutory issue" that the agency claimed required entry of a protective order before it could produce information responsive to Request No. 2.  *Id.*; *see also* pp. 4-5, *supra*.  On November 5, 2018, CMS made its third production of documents including some documents responsive to Request No. 2, but none responsive to Request No. 3.  Santella Decl. ¶ 24.  To date, CMS has produced no documents in response to Request No. 3, insisting that it requires a protective order and/or "attorneys-eyes only" specification before it will do so.  Santella Dec. Ex. E at 2-3.

**Documents Showing Certain Metrics from Worksheet 1 of Part D Bid Pricing Tool (Request No. 5).**  This request seeks targeted actual experience data submitted to CMS by PDP

sponsors in the first worksheet of their Part D bids, which reflects a PDP's actual experience during a "base year" two years prior to the year in which the plan sponsor seeks to offer prescription drug coverage.  Like the documents sought by Requests Nos. 2 and 3, this data bears directly on Relator's contention that CMS would have rejected Humana's bids had it known that the certain assumptions in the bids were false.  *See* Compl. ¶¶ 192-94.  Humana recognized that the responsive data could be competitively sensitive, so the document production instructions accompanying the subpoena specifically ask that the information be produced in an anonymous manner such that it is impossible to identify the plan sponsor that produced the data to CMS.  In July, CMS indicated that documents responsive to this request would require a protective order, *see* Ex. E at 4, even though Humana narrowly tailored the request to seek discrete and anonymized data whose disclosure would not cause competitive harm to other PDPs.  In August, CMS reversed course and stated that it was prevented from disclosing the requested data altogether under Section 1860D-15(f)(2) of the Social Security Act and possibly under the Trade Secrets Act.  *Id.*

Despite Humana's request that CMS memorialize its objections in a formal letter so Humana could evaluate them, and notwithstanding CMS's representation that it would do so, Humana has received no further explanation of CMS's objection to producing documents in response to this request.  Nevertheless, Humana has explained to CMS that neither the Social Security Act nor the Trade Secrets Act bars discovery of such information in litigation under Rule 26.  Santella Decl. Ex. H (Nov. 1, 2018 Letter from A. Santella to J. Abrams).  CMS later represented that it is giving Humana's position "careful consideration," but it has not committed to producing any information in response to Request No. 5.  Santella Decl. Ex. I (Nov. 1, 2018 Email Correspondence from J. Abrams to A. Santella).

**Documents Showing How CMS Assigns Low-Income Members To PDPs (Request No. 10).**  CMS automatically enrolls certain low-income members in PDPs offering prescription drug coverage with a premium at or below an amount known as the "low-income benchmark." *See* Compl. ¶¶ 40, 172.  Request No. 10 seeks documents sufficient to show CMS's policies and procedures concerning the assignment of low-income members to PDPs, which would be probative of Relator's allegation that Humana underestimated the Walmart Plan's future low-income membership by misrepresenting that its premium was likely to exceed the low-income benchmark. *See id.* ¶ 172.  CMS's initial document production contained publicly available portions of the Federal Register and Medicare Part D Manual that the agency represented were responsive to Request No. 10, but the agency has refused to produce additional documents in response to this request absent a protective order.  Santella Decl. Ex. G.

**Documents Concerning CMS Requirements That PDP Sponsors Explain Certain Differences Between Actual Experience and Bid Assumptions When Submitting Bids (Requests Nos. 11 and 12).**  These requests concern CMS's requirement that PDP bids address certain differences between the plan's actual experience and prior assumptions: Request No. 11 seeks documents regarding CMS's decision to require that plan sponsors explain three specified differences but not others, and Request No. 12 seeks documents sufficient to show why PDP bids must demonstrate consistency between the plan sponsor's actual corporate returns and the corporate margin its bids assumed.  Such documents are probative of the materiality of various PDP bid assumptions in the CMS bid approval and payment process.  They bear directly on Relator's contention that the agency would have rejected Humana's bids, and not paid Humana, had it known that Humana's bid assumptions concerning preferred pharmacy utilization, low-income membership, and/or member coinsurance were false.  *See* Compl. ¶¶192-94.

Despite indicating that it would produce responsive documents by mid-to-late September, CMS has produced no documents responsive to these requests.  *See* Ex. E at 6.  On November 5, CMS stated for the first time that it would withhold the few responsive documents it had identified based on the deliberative process privilege.  Santella Decl. Ex. J (Nov. 5, 2018 Email Correspondence from J. Abrams to D. Leviss).  CMS stated that it was willing to produce written testimony in response to these requests, *see id.*—but even if "written testimony" were permitted by the Federal Rules and an adequate substitute for the documents Humana seeks, CMS has offered no such testimony to date.  Santella Decl. ¶ 27.   Nor has the agency produced a privilege log or provided formal written correspondence detailing the basis for its assertion of the deliberative process privilege.  Santella Decl. ¶ 28.

**Documents Concerning Third Party Consultants CMS Retained (Request No. 13).** This request seeks documents sufficient to show the identity of third-party consultants hired by CMS to evaluate Humana's bids for the Walmart Plan.  Such consultants may be fact witnesses in the underlying litigation.  After partially responding to this request in August for only some of the Walmart Plan's bids, and after Humana identified that deficiency, CMS indicated that it had identified additional information responsive to this request—but to date, the agency has not supplemented its incomplete response.  Santella Decl. ¶ 21.

**Documents Concerning The Complaint's Allegations (Request No. 14).**  This request seeks all documents concerning the allegations in Relator's complaint.  Although CMS has speculated that any responsive documents are likely to be privileged, it has not confirmed this fact to date or produced a privilege log that would enable Humana to evaluate the basis of any privilege assertion.  Santella Decl. ¶ 28.

**Deposition Testimony.**  Humana's subpoena seeks testimony from CMS concerning eight narrowly tailored topics: (1) the process by which CMS conducts "desk reviews" of Part D bids; (2) the process CMS uses to evaluate PDP bids; (3) CMS's rejection of any PDP bids based on actual or assumed preferred pharmacy utilization, low-income membership, and/or member coinsurance; (4) CMS's denial of payment to PDP sponsors based on a PDP's actual member coinsurance or rate of preferred pharmacy utilization; (5) CMS's process for evaluating preferred pharmacy utilization by low-income members; (6) CMS's process for assigning low-income members to PDPs; (7) relevant CMS instructions for submission of PDP bids; and (8) the third parties that CMS retained as outside consultants to review the Walmart Plan bids.  *Touhy* Request at 25-26.  As noted above, CMS has refused to provide the requested testimony. Santella Decl. Ex. D.

Humana memorialized these disputes in its October 18 Letter and requested that CMS satisfy all outstanding requests by November 5.  Ex. E at 1, 2, 3, 5, 6.  Having received no further productions in response to most of these requests and incomplete responses to others, Humana has no choice but to seek relief from the Court.

## LEGAL STANDARD

Litigants may obtain relevant, non-privileged discovery from nonparties pursuant to Federal Rule of Civil Procedure 45.  Fed. R. Civ. P. 45; Fed. R. Civ. P. 37(a) (motion to compel a nonparty to comply with a subpoena "must be made in the court where the discovery is or will be taken").  Recipients of subpoenas seeking documents or testimony under Rule 45 are required by law to fully respond to each of the requests.  Fed. R. Civ. P. 45(e); *see United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 544 (S.D.N.Y. 2016)  ("[W]hile nothing in Rule 45 prevents a party from serving objections to a non-party subpoena, such objections, standing alone, have no effect on the nonparty's obligation to respond to the subpoena.").

Where a federal agency is in noncompliance with a subpoena issued under Rule 45,

district courts balance the interests and rights of the parties by employing the limits on discovery

specified in the Federal Rules of Civil Procedure. *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir.

2007) (quotation omitted).  An agency cannot excuse its delay and noncompliance by relying on

its *Touhy* regulations, which provide a framework for requesting agency documents and

testimony but not an independent basis to withhold discovery. *SEC v. Selden*, 484 F. Supp. 2d

105, 107 (D.D.C 2007) ("*Touhy* in no way stands for the proposition that agency regulations alter

the procedures set forth in the Federal Rules of Civil Procedure or that agency regulations can

preclude the production of documents that are relevant to a judicial proceeding.") (quotation

omitted); *In re Shelton Fed. Grp., LLC*, 2017 WL 3190558, at *4 (Bankr. D.D.C. July 26, 2017)

(*Touhy* "does not stand as a separate legal objection to compliance with the subpoena or

justification for quashing, modifying, or limiting any of the subpoena requests.").

"Generally speaking, 'relevance' for discovery purposes is broadly construed." *Jewish*

*War Veterans of the United States of America, Inc. v. Gates*, 506 F. Supp. 2d 30, 41 (D.D.C.

2007).  That legal principle is particularly true where, as here, the court where compliance is

sought has jurisdiction over the discovery dispute but not the underlying action—in which case

this Court should take an especially broad view of relevance. *Flanagan v. Wyndham Int'l Inc.*,

231 F.R.D. 98, 103 (D.D.C. 2005) ("A court with jurisdiction over a discovery dispute for an

action pending in a different district … should hence be cautious in determining relevance of

evidence, and in case of doubt should err on the side of permissive discovery.").

## ARGUMENT

Humana has requested relevant documents and testimony from CMS through subpoenas

properly served under Rule 45, to which the agency is legally required to respond.

Notwithstanding Humana's good-faith efforts to obtain the discovery without judicial

intervention, CMS has not complied fully with the subpoenas—even though more than five

months have passed since they were served.  The subpoenas seek relevant, proportional

discovery of information essential to Humana's defense, and Humana is entitled to full and

immediate compliance by CMS.

I.      **HUMANA'S REQUESTS FOR DOCUMENTS ARE RELEVANT, PROPORTIONAL, AND NOT UNDULY BURDENSOME**

   A.      **Humana's Subpoena Seeks Relevant Documents Proportional To The Needs Of The Case**

Humana's subpoena seeks documents that are relevant to Relator's central allegations.

*See* Fed. R. Civ. P. 26(b).  Each of Humana's outstanding requests seeks documents concerning

CMS's evaluation of PDP bids and payments to PDP sponsors.  *See* pp. 5-10, *supra*.  For

example, Requests Nos. 2 and 3 seek documents that would show CMS's reasons for denying

PDP bids, or questioning PDP sponsors, based on the very same assumptions that Relator

contends were misrepresented in Humana's bids: preferred pharmacy utilization, low-income

membership, and/or member coinsurance.  *Id.*  Likewise, Requests No. 11 and No. 12 seek

documents that would clarify why CMS inquires into some differences between a PDP's actual

experience and the PDP sponsor's earlier bid assumptions, but not others.  *Id.*  Such documents

will be probative of materiality, which is a core element of Relator's FCA claims in this case.

*See Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1986, 2002-03 (2016)

(FCA liability arises only where challenged misrepresentation was material to government's

payment decision).  This critical evidence will shed light on CMS's decisions to approve PDP

bids and pay PDP sponsors, and thus bear directly on Relator's core contention: that CMS would

not have approved Humana's bids or paid Humana under the Part D contracts had it known that

Humana's assumptions concerning preferred utilization, low-income membership, and/or

member coinsurance were false.  *See* Compl. ¶¶ 192-94.

These narrowly drawn requests are proportional to the needs of the case, as Rule 26 requires.  When evaluating proportionality, this Court weighs: "(1) the importance of the issues at stake in [the] action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources' (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Oxbow Carbon & Minerals LLC v. Union P. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017) (quotation omitted).  Humana's requests satisfy all six factors.  Relator's action presents significant issues concerning the liability of PDP sponsors for actuarial assumptions, an integral part of Medicare Part D's risk-sharing policy for delivering prescription drug benefits—and he asserts treble damages totaling more than $1.2 billion.  *See* Compl. ¶¶ 6, 111, 199; *Oxbow*, 322 F.R.D. at 7 (finding that first factor weighed in favor of discovery where issues at stake would have broad impacts beyond the parties, and that second factor weighed in favor of discovery where plaintiff sought $150 million in damages).  Humana seeks documents that go to the heart of Relator's allegations, and because only CMS possesses information regarding the agency's decision-making about the evaluation of Part D bids and payment of PDP sponsors, Humana has no other means of accessing this evidence.  *See Oxbow*, 322 F.R.D. at 7 ("information asymmetry" and relevance of information to a central issue weigh in favor of discovery).  And as discussed in more detail below, CMS has not asserted that its noncompliance is due to any particular burden, much less made an evidentiary showing of undue burden adequate to refuse compliance with Humana' subpoena.  By contrast, the benefit to Humana of its limited requests is significant.  *See, e.g.*, *Buie v. Dist. of Columbia*, 327 F.R.D. 1, 11 (D.D.C. 2018) (holding that challenged request would not impose undue burden when weighed against potential benefit of allowing movant to obtain the responsive information).

### B.       Humana's Requests Do Not Unduly Burden CMS

CMS cannot show that compliance with Humana's subpoenas imposes an undue burden on the agency.  *See, e.g.*, *Alexander v. FBI*, 194 F.R.D. 305, 315 (D.D.C. 2000) ("[I]n order to support its objection, the [resisting party] must make a specific, detailed showing of the burden such a search would require.").  At the outset, CMS asserted a boilerplate objection to Humana's subpoenas but only to the extent any requests were "vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of the case."  *See* Santella Decl. Ex. L (June 25, 2018 Letter from CMS to D. Leviss).  Since that time, the agency has not since argued that its widespread noncompliance is due to any particular burden.  *See id.* at 1.  Moreover, such an objection, standing alone, does not justify noncompliance.  *Cf. Ortiz*, 169 F. Supp. 3d at 544 ("Where … the objecting party has not made (much less won) a motion to quash or for a protective order, the subpoena, if otherwise enforceable, remains so, and the non-party ignores its dictates at some peril.").

Even if the Court were to entertain burden arguments at this juncture, it would have to reject them.  Humana's narrowly drawn requests do not unduly burden CMS, particularly now— where Humana has allowed CMS five months to comply before seeking relief from the Court. *Contra* Fed. R. Civ. P. 45(d)(3)(A)(i) (allowing a court to quash a subpoena failing to allow reasonable time for compliance).  Nor should CMS's posture as a nonparty allow it to deny Humana the needed discovery.  *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) ("While we are sensitive to the imposition of large discovery costs on non-parties and recognize the special need to protect them, we will not read 'undue burden' differently just because a non-party was subpoenaed.") (citations omitted); *SEC v. Fuhlendorf*, 2010 WL 3547951, at *3 (D. Colo. Sept. 7, 2010) ("Fed. R. Civ. P. 45 contemplates that third parties may be subject to some inconvenience in responding to subpoenas.  Only demonstrable undue

inconveniences warrant protection."). Moreover, this Court requires a specific and detailed

showing of burdensome expense, time, or harm that outweighs any likely benefit of the

discovery. *See DL v. Dist. of Columbia*, 251 F.R.D. 38, 46 (D.D.C. 2008) (requiring assertions

of burden to contain specific estimates and examples). The absence of any evidentiary showing

of undue burden here affirms Humana's right to the requested discovery.[2]

## II.   THE COURT SHOULD COMPEL THE REQUESTED TESTIMONY FROM CMS

Until now, Humana has deferred seeking to enforce its subpoena based on CMS's

representation that the agency's forthcoming document production might obviate the need for

any testimony. Because CMS has delayed its full production for many months and because the

fact discovery deadline in this action is just two months from now, Humana can no longer

postpone its efforts to seek additional information through testimony simply based on the

assurance that as-yet unproduced documents will fully answer Humana's questions. The Court

should therefore compel the deposition of CMS.

Humana noticed eight relevant, narrowly tailored topics for deposition pursuant to Rules

30(b)(6) and 45. *See* p. 10, *supra*. Each topic directly relates to Relator's allegation that CMS

would not have approved Humana's bids, or made payments to Humana, had it known that

Humana's bid assumptions concerning preferred utilization, low-income membership, and/or

---

[2] By failing to prepare and serve a privilege log, CMS has arguably waived the right to assert the deliberative process privilege or any other privilege over documents responsive to the subpoena. *See, e.g.*, *Lopez v. City of N.Y.*, 2007 WL 869590, at *4 (E.D.N.Y. Mar. 20, 2007) ("Based on plaintiff's repeated failures to submit a proper privilege log, which required defendant to move twice to compel discovery after plaintiff failed to respond, the Court finds that plaintiff has waived work product protection."). At a minimum, however, CMS cannot lawfully refuse production of responsive documents based on the deliberative process privilege, or any other privilege, without serving a proper privilege log. *In re Apollo Grp. Securities Litig.*, 2007 WL 778653, at *8 (D.D.C. Mar. 12, 2007) ("To the extent the DOE maintains that it is not required to produce the documents sought in the Amended Subpoena on the grounds of various privileges, the DOE must comply with its obligations under Federal Rule of Civil Procedure 45(d)(2) and produce a privilege log that allows Apollo and the Court to assess the validity of the claimed privileges.").

member coinsurance were false.  *See* Compl. ¶¶ 192-94.  As with its subpoena for documents, Humana's narrowly tailored request for testimony more than satisfies the requirements of relevance, proportionality, and burden.  Fed. R. Civ. P. 26(b).

CMS cannot meet the higher standard required where it seeks to avoid testimony altogether, rather than a modification or narrowing of the topics noticed.  Where a party claiming undue burden "seeks to prevent a deposition entirely, [its] burden of proof is particularly great." *Payne v. Dist. of Columbia*, 859 F. Supp. 2d 125, 131 (D.D.C. 2012) ("A court should consider whether mere modification suffices to satisfy Rule 45, since the quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances" (internal citations and internal quotations omitted)).

Having repeatedly failed to produce the subpoenaed documents in this action, CMS cannot now rely on the promise of forthcoming productions to avoid subpoenaed testimony it claims would be duplicative.  Although Humana was willing to defer enforcement of its subpoena for testimony until it could evaluate CMS's document production for completeness, only two months remain before fact discovery in the underlying action closes—and Humana can no longer wait to obtain the responsive testimony it requested from CMS more than five months ago.

## CONCLUSION

For the forgoing reasons, Humana respectfully requests that the Court enter an order compelling CMS to comply with Humana's subpoenas for documents and deposition testimony.

Dated: November 13, 2018                      Respectfully submitted,


_Sara Zdeb_
_____
Sara S. Zdeb (D.C. Bar No. 991065)
K. Lee Blalack II (D.C. Bar No. 452372)
David J. Leviss (D.C. Bar No. 1003724)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, D.C. 20006
202-383-5300
dleviss@omm.com
szdeb@omm.com
Counsel for Humana Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2018, the foregoing Motion to Compel was served

via First Class Mail, postage prepaid, on:


Jill M. Abrams
Office of the General Counsel, CMS Division
U.S. Department of Health and Human Services
330 Independence Ave. SW
Room 5327C, Wilbur J. Cohen Building
Washington, D.C. 20201

*Counsel for Centers for Medicare and Medicaid Services*

Jeffrey McSorley
U.S. Department of Justice, Commercial Litigation Branch
175 N Street NE
Washington, D.C. 20002

*Counsel for United States of America*

Andrew Shen
Kellogg Hansen Todd Figel & Frederick, PLLC
1615 M Street NW, Suite 400
Washington, DC 20036

Claire Sylvia
Phillips & Cohen LLP
100 The Embarcadero, Suite 300
San Francisco, CA 94105

*Counsel for Relator Steven Scott*

Sara S. Zdeb (D.C. Bar No.991065)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, D.C. 20006
(202) 383-5185
szdeb@omm.com

Counsel for Humana Inc.